# EXHIBIT B

| | |
|---|---|
| MASTER LENDING GROUP, LLC, | |
| Plaintiff, | CIVIL ACTION NO.: 4:21-CV-263 |
| v. | |
| TRUIST BANK, INC f/k/a SUNTRUST BANK AND WELLS FARGO BANK NATIONAL ASSOCIATION, INC, | |
| Defendants. | |

**PLAINTIFF'S RESPONSES TO DEFENDANT WELLS FARGO'S FIRST INTERROGATORIES**

TO:     Wells Fargo Bank National Association, Inc.
        c/o Victor L. Hayslip, Benjamin B. Coulter, and Kevin R. Stone
        Burr & Forman LLP
        171 17th Street, NW, Suite 100
        Atlanta, GA 30363

COMES NOW, Plaintiff Master Lending Group, LLC, and responds to Defendant Wells Fargo Bank National Association Inc.'s ("Wells Fargo") First Interrogatories as follows:

**GENERAL OBJECTIONS**

1.

Plaintiff objects to each and every Interrogatory and the instructions thereto to the extent Plaintiff is required to respond by disclosing its attorney's or any other of its representative's mental impressions, conclusions, opinions, computations, calculations, projections, reasons, legal theories, other work product or the like.

2.

Plaintiff objects to each and every Interrogatory and the instructions thereto to the extent that Plaintiff is required to respond by waiving its attorney-client privilege or any other claimed

privilege.

3.

Without waiving or prejudicing its rights to assert these General Objections or any other objection which may be set forth herein, and in a good faith effort to provide the information available at this stage of discovery and in the investigative process in this case, Plaintiff will provide responsive and non-objectionable information now available to it with regard to Wells Fargo's First Interrogatories. Plaintiff reserves the right to timely supplement its responses to these First Interrogatories should its investigation reveal additional responsive information. Subject to the foregoing General Objections and qualifications, Plaintiff responds to Defendant Wells Fargo's First Interrogatories as follows:

**Interrogatories**

*1.      Identify each person who supplied any information or otherwise assisted with the preparation of your responses to these Interrogatories and/or Wells Fargo's First Request for Production of Documents, providing last known contact information for each person identified.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections, Gregory Hirsch, who may be contacted through counsel for Plaintiff was involved in the preparation of these discovery responses, along with the undersigned counsel for Plaintiff.

*2.      Identify all persons you know or believe to have knowledge or information about any of the allegations and matters in your Complaint, providing last known contact information for each person identified and describing in detail any facts or information about which each person identified has or may have knowledge.*

 **Response:**    Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections,

1. **Greg Hirsch,** ▓▓▓▓▓, ▓▓▓, ▓▓▓▓, ▓▓▓, ▓▓. Mr. Hirsch should be contacted through counsel for Master Lending. Mr. Hirsch has knowledge regarding the actions of Dean Emerson Flake, the accounts payable processor for Master Lending who created checks payable to clients of Master Lending, deleted any of Master Lending's records of those checks, and deposited those checks, unendorsed, into his account via Wells Fargo ATMs. Mr. Hirsch has knowledge regarding the manner in which he discovered Mr.

Flake's actions, as well as his efforts to recover funds from Truist Bank, Inc. f/k/a SunTrust Bank ("Truist") and Wells Fargo Bank National Association, Inc. ("Wells Fargo"), including his conversations and emails with bank representatives. Mr. Hirsch also has knowledge of his communications and emails with law enforcement and representatives of the Chatham County District Attorney's office and US Attorney's office regarding the prosecution of Dean Flake.

2. **Dean Emerson Flake,** ██████████████, █████, ██ ████. Mr. Flake has knowledge of the manner and method in which he misappropriated over $1.6 million from Master Lending through unendorsed fraudulent check deposits at Wells Fargo ATM machines.

3. **Xavier Cunningham**, US Attorney's Office, ████████████, ███████, ███████, █████, ██-██-████. Mr. Cunningham is familiar with the federal criminal prosecution of Dean Flake in the Southern District of Georgia and the facts surrounding Mr. Flake's actions.

4. **Matthew Williams**, United States Secret Service, ████████, ███████, ████████, ██████, ██-██-████ (as of Mar. 13, 2020). Mr. Williams was involved in the investigation that led to the indictment of Dean Flake for five (5) counts of bank fraud and three (3) counts of aggravated identity theft.

5. **William Stegin**, Investigator, Chatham County District Attorney's Office, ██████████████, ███████, ████████, ██ ████. Mr. Stegin may have been involved in a criminal investigation of the above-described actions of Dean Flake and may have knowledge of initial meetings regarding the matter.

6. **Daniel Snipes**, ████████████, ████████, ██ ████, ██-██-████. As Mr. Flake's defense counsel in the federal case, Mr. Snipes has knowledge regarding the criminal prosecution of Dean Flake.

7. **Alex Zipperer**, Zipperer, Lorberbaum & Beauvais, ████████████, ████ ████ ████, ██-██-████. Mr. Zipperer has knowledge regarding this matter as he represented and assisted Greg Hirsch in reporting Dean Flake's above-described actions to law enforcement authorities. Plaintiff's identification of Mr. Zipperer does not constitute a waiver of the attorney-client privilege or work product doctrine.

8. **Baldree Quinn**, Market President of Truist and former First Vice President of SunTrust Bank, ████████, ███████, ████████, ████ ████, ██-██-████, ██-██-████ (as of Jan. 3, 2020). Mr. Quinn may have knowledge regarding Greg Hirsch's fraud claim and his efforts to recover the funds lost due to the negligence and breach of warranties of Truist and Wells Fargo.

9. **Jan Pound**, Assistant to Baldtree Quinn. She may have similar knowledge as Mr. Quinn regarding Greg Hirsch's efforts to make a fraud claim and recover Master Lending's lost funds.



10. **Mark Council Jr.**, Senior Fraud Investigator for Truist and former Fraud Investigator for SunTrust, ███████, ████, █████, ██-██-██ ext. ██████ (as of February 10, 2020). Mr. Council may have knowledge regarding case number FDR2019096025. Mr. Council was involved in the investigation of Master Lending's fraud claim, which was presented to Wells Fargo.

11. **Steve Green**, ████████████ ████████, ██ ████, ██-██-██. Mr. Green is the owner of Presidents Quarters' Inn and has knowledge regarding Dean Flake's theft of approximately $80,000 from Presidents Quarters' Inn using the same methodology he used to steal from Master Lending.

12. **Jeff Tucker**, Hirsch & Tucker, LLC, ██████████, █████, ██████ ████, ██-██-██. Mr. Tucker is a certified public accountant who has knowledge of Dean Flake's defalcation of approximately $1.6 million from Master Lending.

13. **Angela Dietz**, Hirsch & Tucker, LLC, ██████████, █████, ██████, ██ ████, ██-██-██. Ms. Dietz has some knowledge of Dean Flake's defalcation of approximately $1.6 million from Master Lending. Ms. Dietz notarized Dean Flake's general affidavit regarding his above-described actions.

14. **Barbara Flake**, ███████████, ██████, █████ ████. Mrs. Flake is the mother of Dean Flake and may have some knowledge regarding his above-described actions. Mrs. Flake will also have some knowledge of Dean Flake's efforts to acquire money to repay Master Lending and Presidents Quarters' Inn.

*3.       Identify all members, both past and present, of Master Lending by name, address, and phone number.  If any of those members are LLCs, partnerships, or other similar entities, identify the members, partners, or other constituents of those entities, continuing to do so until all natural persons or corporations having any interest in Master Lending are identified.*

**Response:**  Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein.  Subject to those objections, Gregory Hirsch is the sole member of the Plaintiff.

*4.       Identify all members, both past and present, of Hirsch & Tucker, LLC by name, address, and phone number.  If any of those members are LLCs, partnerships, or other similar entities, identify the members, partners, or other constituents of those entities, continuing to do so until all natural persons or corporations having any interest in Hirsch & Tucker, LLC are identified.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein.  Subject to those objections, Greg Hirsch and Jeff Tucker are the only members. The address is ██████████, ███████, ██████ ████.  The telephone number is ██-██-██.

*5.       Identify all members, both past and present, of Presidents Quarters' Inn by name, address, and phone number.  If any of those members are LLCs, partnerships, or other similar entities,*

*identify the members, partners, or other constituents of those entities, continuing to do so until all natural persons or corporations having any interest in Presidents Quarters' Inn are identified.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Plaintiff further objects that this request seeks information beyond the scope of Plaintiff's knowledge. Subject to those objections, Plaintiff generally understands that Steve Green was the sole owner and sole member of Presidents Quarters' Inn. Upon information and belief, Mr. Green sold Presidents Quarters' Inn during 2021 and no longer has any ownership interest. Mr. Green is identified in response to Interrogatory No. 2.

*6.     Describe in detail the relationship, if any, between Master Lending and Hirsch & Tucker, LLC and/or Presidents Quarters' Inn. Identify all persons with knowledge or information about said relationship and identify all documents and communications that relate to or contain information about said relationship.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections, Master Lending is a client of Hirsh & Tucker. Similarly, Presidents Quarters' Inn is a client of Hirsch & Tucker. There is no relationship between Master Lending and President Quarters' Inn. All persons with knowledge regarding these relationships were identified in response to Interrogatory No. 2. All documents or communication in the possession of Plaintiff that relate to or contain information regarding these relationships are being produced in response to Wells Fargo's Request for Production of Documents.

*7.     Identify and describe every item of damages you claim and how you arrived at that figure.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections, Master Lending seeks to recover $647,356.71 in damages against Defendants, which is the value of the items paid from Master Lending's account on forged payee signatures on checks without endorsements ($1,622,495.38), minus the funds subsequently recovered ($975,138.79). Documents reflecting the wrongfully paid amounts from Plaintiff's account are reflected in account statements and copies of checks that are being produced in response to Wells Fargo's Request for Production of Documents. Plaintiff also seeks to recover attorneys' fees and expenses of litigation, the total amount of which are unknown at this time.

*8.     Describe in detail the employer-employee relationship, if any, between Master Lending and Dean Emerson Flake. Identify all persons with knowledge or information about said relationship and identify all documents and communications that relate to or contain information about said relationship.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections, Mr. Flake was not employed by Master Lending. Mr. Flake was an employee of Hirsch & Tucker, LLC. Persons with knowledge of this employment relationship are identified in response to Interrogatory No. 2. Plaintiff does not have any documents reflecting Mr. Flake's employment relationship with Hirsch & Tucker, LLC other than possibly W-2 forms which will be produced in response to Wells Fargo's Request for Production of Documents if they are in Plaintiff's possession.

*9.    Identify all persons associated with Master Lending who have ever had any supervisory role of Dean Emerson Flake.*

**Response:**  Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein.  Subject to those objections, Greg Hirsch, as member of Hirsch & Tucker, LLC.

*10.    Identify all persons who were responsible for balancing, reconciling, and/or reviewing the Master Lending account from which Dean Emerson Flake wrote the checks that he later deposited into his personal account.*

**Response:**  Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein.  Subject to those objections, Dean Flake was responsible for reviewing the Master Lending account from which he wrote checks.  Greg Hirsch also had access to the bank account and accounting information and was responsible for reconciling and balancing the account.  He did not regularly review the account information since he trusted his accounting firm and Dean Flake, who had been with Hirsch & Tucker, LLC and its predecessor firm for a total of 34 years.

*11.    Identify any and all communications, oral, written, or electronic, that you or anyone on your behalf has had with Dean Emerson Flake regarding any of the allegations and matters in your Complaint.*

**Response:**  Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein.  Subject to those objections, the documents responsive to this request are being produced in response to Wells Fargo's Request for Production of Documents and are bates numbered "MLG – 0791" through "MLG – 0820".

*12.    Identify any and all communications, oral, written, or electronic, that you or anyone on your behalf has had with Wells Fargo or any third party (excluding your attorneys) regarding the allegations and matters in your Complaint, specifically identifying the employee, agent, representative, or person with whom you spoke, the date and time of each such communication, the contents of each such communication, any witnesses thereto, all persons with knowledge or information about said communication, and all documents evidencing, constituting, relating to, or containing information about said communications.  For each person identified, provide their name, address, telephone number, and describe in detail all facts about which each such person has or may have knowledge.*

**Response:**  Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein.  Subject to those objections, the written documents responsive to this request are being produced in response to Wells Fargo's Request for Production of Documents and are bates numbered "MLG – 0752" through "MLG – 790 and "MLG – 0821" through "MLG – 0919".  With respect to its communication, Plaintiff does not recall any direct communication with Wells Fargo as SunTrust employees advised Mr. Hirsch that Wells Fargo required SunTrust to initiate the fraud complaint.  Mr. Hirsch was later advised by SunTrust that Wells Fargo never initiated a fraud case. To Plaintiff's knowledge, Wells Fargo refused to acknowledge that it received a fraud complaint and therefore refused to pursue the matter, despite the reported fraud claim by SunTrust.  Each

person with knowledge or information regarding communications is identified in response to interrogatory no. 2.

*13.     When and how did you first become aware of Dean Emerson Flake's alleged theft of funds from Master Lending?  Identify all persons with knowledge or information about said facts and circumstances and identify all documents and communications that relate to or contain information about said facts and circumstances.*

**Response:**  Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections, during the end of 2nd quarter of 2019, Greg Hirsch began to notice discrepancies in what he believed should be available in Master Lending's account (SunTrust ██████████6810) compared to what seemed to be available. Reviews of disbursement ledgers prepared by Hirsch & Tucker, LLC employee Dean Flake did not indicate anything overtly wrong and due to time constraints, he did not review the bank records that would have revealed the fraud.  All disbursement checks had always been prepared by Dean Flake, an employee of Hirsch & Tucker since 1986, a friend, and a person everyone considered Mr. Hirsh's "right hand" on all things personal and business. Mr. Hirsch's mother called Mr. Flake "her other son." Mr. Flake was the senior staff accountant with Master Lending's accounting firm, Hirsch & Tucker.  He was known by the vast majority of Master Lending's clients and was the go-to guy for everyone in Master Lending's office.

Mr. Hirsch received a phone call around the end of October or beginning of November 2019 from the fraud department of either SunTrust or Wells Fargo referencing checks from Master Lending's SunTrust account being deposited into a third-party's individual account at Wells Fargo. The call was short but Mr. Hirsch immediately realized what could be happening.  He performed a quick review of cancelled checks clearing the SunTrust bank account and saw duplicate known payee checks clearing the bank. He immediately called Flake into his office and described what had come to light. Mr. Flake closed the door and stood in silence. Mr. Hirsch asked Mr. Flake if he had been stealing from Master Lending and Mr. Flake began to cry.  Mr. Hirsch asked when it all started and how much he had stolen. Mr. Flake responded that he thought it started about a year to a year and a half ago and that he was not sure how much he had stolen. Mr. Hirsch then told him to leave the office. He came back to the office later and said the amount stolen was approximately $600,000 but that he could not remember exactly when it started or the exact amount. He asked if he was fired and Mr. Hirsch responded "not yet" and told him it was critical to get more information. That night, Mr. Hirsh reviewed a random sampling of cleared checks and recognized the theft went back well beyond a year.

The next day, Mr. Hirsch called Mr. Flake into his office and asked him if he had stolen from anyone else. Mr. Flake responded that he had not.  Mr. Hirsch believed that Mr. Flake had a few other clients for which he had check-writing privileges.  He told Mr. Flake that he wanted his financial records and asked him about insurance policies on both him and his mother.  Mr. Flake stated that he had a large portion of the stolen funds in a personal account at Wells Fargo and stated that for some reason, he could not access those funds. Mr. Hirsch told him he wanted all documentation on his accounts, correspondence to him from Wells Fargo, and supporting documents for the funds he took. Mr. Hirsch told Mr. Flake that it appeared this

scheme went back more than a year and he said he was having a hard time remembering anything. Mr. Hirsch told him the focus at the moment had to be on recovery of funds and obtaining detail about everything Mr. Flake had stolen.

Mr. Flake eventually confirmed to Mr. Hirsch that his actions had occurred over more than a year and the amount stolen was over $1.2 million. He stated that he began stealing during the latter part of 2017. From Mr. Hirsch's review, it appeared to begin during 2016 with the total amount stolen closer to $1.6 million. Mr. Flake acknowledged that he would computer generate checks to known payees for amounts similar to what they normally received and then forge Mr. Hirsch's signature on those checks. Flake would not "update" those checks in the accounting system, which eliminated any evidence the checks existed. Mr. Flake admitted that he would take the checks and deposit them into his personal Wells Fargo account via an assortment of ATMs throughout the Savannah area.

Again, Mr. Hirsch requested all documentation of any bank accounts, investments, cash, life insurance policies and retirement accounts from Mr. Flake because his initial focus was on recovery of funds. Mr. Flake provided correspondence from Wells Fargo indicating his account contained approximately $975,000 but was frozen pending an expected fraud claim from another bank, in which case the funds would be returned to the originating bank account. Mr. Flake provided life insurance policies and info on his retirement account. Mr. Hirsch again asked Mr. Flake if he had stolen from anyone else, specifically if he had stolen anything from Steve Green/Presidents Quarter's Inn. Mr. Flake acknowledged that he had in fact done the same thing to Presidents Quarters' Inn on a much smaller scale. Mr. Hirsch retrieved their books and requested information from Mr. Flake within 24 hours regarding what he had stolen from Presidents Quarter's Inn. Mr. Hirsch also suggested that Mr. Flake call Steve Green and tell him what he had done and strongly suggested he do whatever was necessary to pay back Presidents Quarters' Inn. Mr. Hirsch told Mr. Flake that he would disclose the stealing to Steve Green if necessary. Eventually, he did meet with Mr. Green and advised him of what had happened. Mr. Hirsch believes that Mr. Flake made two payments to Presidents Quarter's Inn to repay what he had stolen.

During this time frame, Mr. Hirsch began the process of a "fraud recovery claim" with SunTrust and Wells Fargo. He was told that SunTrust would have to submit the claim to Wells Fargo to recover the funds. The process seemed unclear to Mr. Hirsch and many weeks passed with no success in recovering the funds. At a point, it was suggested that Mr. Hirsch obtain a signed confession from Mr. Flake that SunTrust would use to expedite recovery from Wells Fargo. Mr. Hirsch prepared the affidavit and Mr. Flake read and confirmed it and then signed it in the presence of a Notary. Nothing had happened regarding the claim to recover funds and the fraud investigator from SunTrust advised Mr. Hirsch that Wells Fargo claimed to have no record of a fraud claim, despite SunTrust submitting it twice.

Mr. Hirsch requested that Mr. Flake cash in his retirement account and write a check to Master Lending in partial repayment of the stolen funds. Mr. Flake advised Mr. Hirsch that he had opened a new account at Morris Bank. Mr. Flake also provided information on his insurance policies and was supposed to designate Mr. Hirsch as beneficiary on those policies. During this time, Mr. Flake was advised to get all of his client accounts in orderfor transfer to other

accountants in Hirsch & Tucker's office.  When Mr. Hirsch asked for confirmation that he had been named as beneficiary on the insurance policies, Mr. Flake said he could not do that. Hirsch & Tucker officially fired Mr. Flake and changed the office locks on January 8, 2020, although he was not paid for the two weeks prior. Subsequently, Mr. Hirsch received notice that the check written to him from his retirement plan disbursement had been stopped by the account holder (Mr. Flake).

All documents in Plaintiff's possession that are responsive to this request are being produced in response to Wells Fargo's Request for Production of Documents.

*14.      Describe in detail the efforts, if any, undertaken by you to investigate the alleged theft of funds from Master Lending by Dean Emerson Flake and the facts and circumstances surrounding the same, identifying all persons with knowledge or information about said efforts and identifying all documents and communications that relate to or contain information about said efforts.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein.  Subject to those objections, see response to Interrogatory No. 13. As stated above, Angela Dietz notarized Mr. Flake's signature on the affidavit.

*15.      Describe in detail the efforts, if any, undertaken by you to report to law enforcement authorities the alleged theft of funds from Master Lending by Dean Emerson Flake and the facts and circumstances surrounding the same, identifying all persons with knowledge or information about said efforts and identifying all documents and communications that relate to or contain information about said efforts.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein.  Subject to those objections, Greg Hirsch and his attorney, Alex Zipperer, met with Secret Service and provided documents to substantiate Mr. Hirsch's claims of embezzlement and fraud by Dean Flake as described in response to Interrogatory No. 13.

*16.      Describe in detail the efforts, if any, undertaken by you to recover the funds allegedly stolen from Master Lending by Dean Emerson Flake and the facts and circumstances surrounding the same, identifying all persons with knowledge or information about said efforts and identifying all documents and communications that relate to or contain information about said efforts.*

**Response:**  Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein.  Subject to those objections, see response to Interrogatory No. 13. Mr. Hirsch also reported the theft to the Secret Service which eventually referred the matter to the US Attorney's office.  Special Agent Matthew Williams with the Secret Service was at the meeting. His address at the time was ████████, █████, █████, ██ ██.██-██-███.

*17.      Describe in detail the efforts, if any, undertaken by you to assist in a criminal investigation of Dean Emerson Flake by the Chatham County District Attorney's Office and the facts and circumstances surrounding the same, identifying all persons with knowledge or information about said efforts and identifying all documents and communications that relate to or contain information about said efforts.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections, at this time, Mr. Hirsch does not recall the interaction with the Chatham County District Attorney's office, except that he had a business card for Billy Stegin. Mr. Hirsch will supplement this response if additional information is obtained that is responsive to this Interrogatory.

*18.     Describe in detail the efforts, if any, undertaken by you to assist in the prosecution of Dean Emerson Flake by the United States Attorney's Office for the Southern District of Georgia and the facts and circumstances surrounding the same, identifying all persons with knowledge or information about said efforts and identifying all documents and communications that relate to or contain information about said efforts.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections, Mr. Hirsch reported the matter to the Secret Service. Mr. Hirsch may have testified before a grand jury but does not specifically recall. All persons of whom Plaintiff is aware may have knowledge or information about these efforts have been identified in response to Interrogatory number 2.

*19.     Identifying any current or pending litigation (including civil and criminal actions) that you are involved with in any way arising from the alleged theft of funds from Master Lending by Dean Emerson Flake.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections, Plaintiff is not involved in any other litigation, except for the instant case.

*20.     State the basis for your allegation in Paragraph 10 of your Complaint that Wells Fargo "failed to exercise ordinary care," identifying all persons with knowledge or information of same and identifying all documents and communications that relate to or contain information about same.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Plaintiff further objects to this interrogatory as premature, as contention interrogatories are typically appropriate at the end of the discovery period, and discovery is ongoing. Fed. R. Civ. P. 33(a)(2). Subject to those objections and based upon the knowledge it presently possesses, Plaintiff states that Defendant Wells Fargo failed to review the fraudulent checks that were deposited in their ATM's for an appropriate endorsement before presenting the checks to SunTrust Bank for payment, and in fact, submitted checks for payment that contained no endorsement whatsoever.

All documents in Plaintiff's possession that are responsive to this request are being produced in response to Wells Fargo's Request for Production of Documents.

*21.     State the basis for your allegation in Paragraph 11 of your Complaint that Wells Fargo "breached its duty, contract, and warranty of title to the Plaintiff thus causing damage to the Plaintiff," identifying all persons with knowledge or information of same and identifying all documents and communications that relate to or contain information about same.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Plaintiff further objects to this interrogatory as premature, as contention interrogatories are typically appropriate at the end of the discovery period, and discovery is ongoing. Fed. R. Civ. P. 33(a)(2). Subject to those objections and based upon the knowledge it presently possesses, Wells Fargo presented the fraudulent checks to SunTrust for payment. Said presentment constitutes a warranty that Wells Fargo had good title to the checks. In fact, they did not because the checks were not endorsed.

*22.     State the basis for your allegation in Paragraph 12 of your Complaint that Wells Fargo "has acted in bad faith in the transaction, [ ] been stubbornly litigious and ha[s] caused the Plaintiff much trouble and expense," identifying all persons with knowledge or information of same and identifying all documents and communications that relate to or contain information about same.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Plaintiff further objects to this interrogatory as premature, as contention interrogatories are typically appropriate at the end of the discovery period, and discovery is ongoing. Fed. R. Civ. P. 33(a)(2). Subject to those objections and based upon the knowledge it presently possesses, Wells Fargo acted in bad faith in the transaction because they failed to perform the basic function of reviewing the checks deposited in their ATM for proper endorsements which appears to be a policy or common practice. They have been stubbornly litigious, and they have denied liability for a clear breach of warranty. Wells Fargo's negligence and breach of warranty has caused Plaintiff unnecessary trouble and expense as Master Lending lost over $1.6 million as a result of the fraudulent checks, over $600,000 of which has not been repaid. Plaintiff has been forced to expend attorney's fees and expenses pursuing a recovery of the amount lost as a result of the action and inaction of Wells Fargo.

*23.     Identify any and all communications, oral, written, or electronic, that you or anyone of your behalf has had with Dean Emerson Flake regarding his alleged efforts to acquire funds to repay Master Lending.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections, the documents responsive to this request are being produced in response to Wells Fargo's Request for Production of Documents and are bates numbered "MLG – 0791" through "MLG – 0820".

*24.     Identify by name and address all entities, including but not limited to any accounting firms, auditors, bookkeepers, and/or accountants, that have provided professional services to you in the last eight (8) years.*

**Response:** Plaintiff refers to and incorporates by reference each of its General Objections as if set forth herein. Subject to those objections, Hirsch & Tucker, LLC and Dean Flake are the only accounting firms and bookkeepers to have provided such services.

This 3rd day of January, 2022.

/s/   *Dwight T. Feemster*
Dwight T. Feemster
Georgia Bar No. 257253
340 Eisenhower Drive
Suite 800, Second Floor
Savannah, GA 31406
Phone: (912) 236-6311
Fax: (912) 236-6423
Dwight@duffyfeemster.com
*Attorney for Plaintiff*

/s/ *Jeffrey W. DeLoach*
Jeffrey W. DeLoach
Georgia Bar No. 081669
EPPS, HOLLOWAY, DELOACH &
HOIPKEMIER, LLC
1220 Langford Drive
Building 200-101
Watkinsville, GA 30677
Phone: (706) 508-4000
jeff@ehdhlaw.com
*Attorneys for Plaintiff*

## VERIFICATION

Personally appeared before the undersigned officer, duly authorized to administer oaths, Gregory M. Hirsch, who, being first duly sworn, deposes and says on oath that the responses to Defendant Wells Fargo Bank National Association, Inc.'s First Continuing Interrogatories are true and correct where derived from his knowledge and believed to be true and correct where derived from the knowledge of others.

This 29th  day of December , 2021

 

 

_____

Gregory M. Hirsch, Managing Member
Master Lending Group , LLC

 

 

Sworn to and subscribed before me this
29th day of December, 2021

_____
Notary Public